UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFREDO VASQUEZ HERNANDEZ | No. 09 CR 383<br><br>Chief Judge Ruben Castillo |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant's sentencing memorandum and objections to the presentence investigation report:

**I.  Introduction**

On August 6, 2009, April 5, 2011, and January 5, 2012, defendant was respectively charged in the First, Second, and Third Superseding Indictments in this matter with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of Title 21, United States Code, Section 846 (Count One), and conspiracy to import a controlled substance into the United States, in violation of Title 21, United States Code, Section 963 (Count Two).  R. 7, 75, and 157.  Defendant was arrested in Mexico and, following formal a petition by the government, extradited to the United States; first appearing before this Court on October 5, 2012.  R. 190.  On

April 29, 2014, defendant entered a blind plea of guilty to Count One of the Third Superseding Indictment. R. 314 and 315.

## II.     The Offense Conduct

Between May 2005 and December 2009, defendant was a member or associate of the Sinaloa Cartel and, specifically a member of a conspiracy to import into the United States and distribute massive quantities of cocaine. Defendant's role in the conspiracy was to act as a logistical coordinator, responsible for the transportation of cocaine from Central and South America to Mexico, as well as from Mexico into and throughout the United States for further distribution to customers in the United States, including in the Northern District of Illinois. Defendant performed this role in multiple ways, including through the organization of airplanes and submarines used to transport cocaine into Mexico, and through the organization of trains used to smuggle cocaine across the U.S.-Mexico border and transport it throughout the United States.

In particular, defendant worked directly with multiple co-conspirators, including Joaquin Guzman Loera (a/k/a "Chapo") and Pedro and Margarito Flores (the "Flores brothers"), to smuggle cocaine from place to place using various modes of transportation. With respect to airplanes, defendant

2

worked with Chapo to arrange for large cargo planes to transport cocaine directly from Colombia to Mexico. Defendant admitted to his role in these loads in a conversation with the Flores Brothers which occurred on or about November 2, 2008 and, unbeknownst to defendant, was recorded by the Flores brothers. A transcript of the pertinent portions of this recording is attached as Exhibit 3.[1] Certain portions of the recording were unintelligible due to the recording device being placed in Margarito Flores's pocket. Nonetheless, defendant clearly describes the use of an airplane to transport loads of approximately 1,700, 7,000, and between 11,000-13,000 kilos from Bogota, Colombia to Mexico. *See* Exhibit 3 at pages 16-18.

Both Flores brothers provided sworn statements regarding defendant's role in the conspiracy. The pertinent portions of these statements are attached as Exhibits 1 and 2. On June 4, 2009, these statements were presented to a grand jury investigating this matter and each Flores brother testified under oath to the truthfulness and accuracy of the information contained in their respective statements. In addition to describing

---

[1] Defendant argues that there is an insufficient basis to establish that defendant is the speaker in this recorded conversation. This argument fails for two principle reasons. First, both Flores brothers identified defendant as the speaker in the recording who describes the airplane transportation system. Second, defendant has admitted to transporting 276 kilos of cocaine with the Flores brothers in November 2008, including 76 kilos which were acquired on credit to be further sold at a Chicago price. The recorded conversation matches defendant's admissions exactly, circumstantially establishing defendant as the speaker.

3

defendant's role in the airplane transportation, the Flores brothers further testified to defendant's role in transporting cocaine by submarine. *See* Exhibit 1 at pages 7-9 and 14-16, and Exhibit 2 at pages 7-9 and 14. According to the Flores brothers, defendant, Chapo, and the Flores brothers had all invested in a multi-ton load of cocaine that was in transit via submarine at the time of the consensually recorded conversation. According to the Flores brothers, the mentions of a forthcoming "surprise" on pages 2, 3, 12, and 16 of Exhibit 3 are references to the arrival of the submarine load of cocaine.

Finally with respect to the transportation of drugs, defendant specialized in smuggling drugs into the United States and transporting them to Chicago hidden inside of rail cars. As further described on pages 8-9 in Exhibits 1 and 2, the Flores brothers testified that they provided approximately $600,000 to defendant to facilitate defendant's creation of an import/export front company to be used to facilitate the transportation of cocaine in rail cars. The planned system was established and used to transport cocaine beginning in late-2007. As defendant partially admitted in his plea declaration, this system was used in November 2008 to smuggle approximately 276 kilos of cocaine to Chicago for further distribution. PSR at

4

paragraphs 20-21. Defendant and the Flores brothers discussed this shipment and negotiated the price of 76 kilos of the shipment during the recorded November 2, 2008 conversation, ultimately agreeing on a total price of $2,166,000, the equivalent of $28,500 per kilo. See Exhibit 3 at pages 8-10. The Flores brothers further testified that defendant's wife and four additional people, three of whom were brothers, were all involved in the system of transporting through the front company and rail system. Specifically, on behalf of defendant, the non-brother associate was responsible for running the front business, and the three brothers oversaw the loading and unloading of the cocaine into and out of the rail cars and other facets of the operation.

### III. **Defendant's Objections to the PSR**

In his sentencing memorandum, defendant contests multiple components of the Guidelines calculation in the PSR. Specifically, defendant argues: (1) that he should only be held accountable for 276 kilos of cocaine, which would place him at an offense level 36 under the November 2014 Guidelines; (2) that he should not be subjected to an enhancement for the use of an airplane to import a controlled substance (USSG § 2D1.1(b)(3) under the 2014 Guidelines currently in effect; § 2D1.1(b)(2) under the 2008 Guidelines in effect at the time of the offense); (3) that he should not receive

5

an enhancement for the possession of a firearm pursuant to § 2D1.1(b)(1); and (4) that he should not receive a 3-level enhancement for his role in the offense pursuant to § 3B1.1. Each of these Guidelines finding are appropriate and the Court should adopt the calculation recommended in the PSR.

*Base Offense Level*

Defendant should be held accountable for far more than the 450 kilos of cocaine required for the Court to find a base offense level of 38 pursuant to § 2D1.1(a)(1) of the November 2014 version of the Guidelines. In addition to the 276 kilos of cocaine for which defendant took responsibility in his plea declaration, defendant further admitted to being responsible for no less than an additional 20.7 tons in the recorded conversation with the Flores brothers (three separate airplane loads of approximately 1.7, 7, and 11 metric tons each).[2] Defendant's recorded admission, coupled with the Flores brothers' sworn testimony, is more than sufficient to support a finding by a

---

[2] Defendant argues that there is no evidence that these loads were transported during the pendency of the conspiracy. This argument fails for two reasons. First, in the recorded conversation, defendant stated he believed that the most recent use of this airplane was in approximately November 2007, well within the May 2005 to December 2008 operative dates charged in the indictment. See Exhibit 3 at pages 17-18. Second, the Flores brothers testimony makes clear that defendant transported all three loads of cocaine for Chapo as part of the same jointly undertaken criminal activity as the charged conspiracy. Even if any of the three loads occurred prior to the beginning of the charged conspiracy, they should be considered relevant conduct pursuant to USSG § 1B1.3.

6

preponderance of the evidence that defendant is responsible for trafficking more than 450 kilos of cocaine; however, in addition to this evidence directly associated with defendant, there exists substantially more evidence of drug quantities which were reasonably foreseeable to defendant.  As set forth in the Third Superseding Indictment, the government seized approximately 1,930 kilos of cocaine during the pendency of the charged conspiracy.  The Flores brothers' testimony establishes that defendant was a high-level member of the conspiracy with direct ties to Chapo, who, along with Ismael Zambada Garcia (a/k/a "Mayo") was the ultimate leader of the Sinaloa Cartel.  Moreover, the Flores brothers testified that, in addition to his role in transporting cocaine, defendant and his wife were further responsible for the laundering of proceeds derived from Chapo's sale of cocaine to his customers in the United States.  Although defendant's high-level role in the Cartel and in the conspiracy is sufficient to make ton-quantities of cocaine foreseeable to defendant on a general basis, the laundering of these proceeds made defendant specifically aware that vast quantities of cocaine (far in excess of 450 kilos) were distributed in the conspiracy.  The PSR properly holds defendant accountable for these quantities through the application of an offense level of 38 pursuant to § 2D1.1(a)(5)(c)(1).

*Two-Point Enhancement for the Use of an Airplane to Import Cocaine*

Defendant next objects to the applicability of a two-point enhancement for the use of an airplane to import a controlled substance into the United States pursuant to § 2D1.1(b)(3), which reads, in pertinent part, "If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance… increase by 2 levels."[3] PSR at paragraph 42-43. Defendant's primary argument once more is that there is insufficient proof to establish defendant's role in using airplanes. This argument fails for the reasons

---

[3] In pertinent part, the November 2008 version of the Guidelines applicable at the time of the offense contains only an enhancement for the use of an airplane (USSG § 2D1.1(b)(2)). The November 2014 version of the Guidelines contains an additional provision for the use of a submarine: "If the defendant unlawfully imported or exported a controlled substance under circumstances in which... (B) a submersible vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used… increase by 2 levels (§ 2D1.1(b)(3))." Based on the above evidence regarding the use of submarines, this enhancement should apply to defendant under the current Guidelines. Defendant seemingly has made his sentencing arguments under a split application of different versions of the Guidelines:(1) the current Guidelines for the base offense level to take advantage of the increased drug quantity required to reach level 38, 150 kilos of cocaine under the 2008 manual, 450 kilos under the current manual; and (2) the 2008 Guidelines for the airplane/submarine enhancement. Fully recognizing the Supreme Court's holding in *Peugh v. United States*, 133 S. Ct. 2072 (2013) which prohibits applications of the Guidelines in violation of the *ex post facto* clause of the Constitution, the government notes that USSG § 1B1.11(b)(2) expressly states that a sentencing court shall not apply one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. The government respectfully submits that the use of one version or the other (2008 vs. 2014) is required to properly calculate defendant's advisory Guidelines range, and any changes to the manual over time can be addressed through the Court's complete sentencing discretion guided by the factors in 18 U.S.C. § 3553(a).

8

stated above. Defendant further argues that the enhancement is inapplicable because the plain language of the Guideline requires that the airplane be used for the actual crossing of drugs into the United States, as opposed to a plane being used earlier in the transportation process, but not to cross the U.S.-Mexico border. Defendant cites no case law on this distinction. The government researched the topic as well and was not able to find a case on point. However, the general laws describing a drug conspiracy are instructive. The Seventh Circuit has repeatedly described a drug conspiracy using the analogy of links in a chain. *See, i.e, United States v. Gilmer*, 534 F.3d 696 (7th Cir. 2008). Here a conspiracy existed to transport cocaine all the way from Colombia to the Northern District of Illinois. Defendant was intimately involved in multiple links of this unbroken supply chain, including through the use of aircraft other than non-commercial air carriers to transport cocaine which was ultimately smuggled into the United States for distribution. This unbroken supply chain leading to the importation of cocaine which involved the use of aircraft is sufficient to support the applicability of the two-point enhancement.

*Two-Point Enhancement for the Possession of a Firearm*

Defendant next objects to the application of a two-point enhancement for the possession of a firearm pursuant to USSG § 2D1.1(b)(1). Defendant argues that, although he pled guilty to Count One of the indictment, which includes references to the use of firearms to further the conspiracy, he only admitted to one 276-kilo distribution in his plea declaration and therefore has not admitted to the possession of firearms by his co-conspirators. Defendant additionally argues that even if firearms were possessed, these firearms were not reasonably foreseeable to defendant. Defendant's arguments are without merit. Defendant may have chosen which facts to include in his plea declaration, but in order to plead guilty to Count One, he has admitted to the existence of a conspiracy—in this instance a conspiracy involving the leadership of the Sinaloa Cartel and the trafficking of ton quantities of drugs. It was entirely foreseeable that such a conspiracy would involve the possession of weapons. In addition, multiple members of the same conspiracy have pled guilty to the possession of weapons, including Cesar Perez, who received the 276 kilos of cocaine from defendant's workers in Chicago in November 2008 after the cocaine was transported via defendant's rail system. Perez admitted to acquiring multiple firearms at the

10

direction of the Flores brothers. *See United States v. Cesar Perez, et al*, 09 CR 669 (J. Zagel), document number 143 at page 4. In addition, co-defendant Vicente Zambada Niebla further admitted to the possession of firearms by members of the conspiracy in his plea agreement. R.217 at page 7. For all of these reasons, the two-level enhancement for the possession of a firearm is proper.

### *Three-Point Enhancement for Defendant's Role as a Manager/Supervisor*

Defendant also contests the applicability of the three-point role adjustment pursuant to § 3B1.1(b) contained in the PSR, specifically arguing that he did not manage or direct any other members of the conspiracy. This is simply not so. As the evidenced by the Flores brothers' testimony, at a minimum, defendant managed no fewer than four subordinates, the three brothers and a fourth person, who were responsible for overseeing various components of defendant's front company and transportation infrastructure involved in moving cocaine by rail car. Contrary to defendant's assertion in his filing, this included workers in Chicago responsible for the offloading of cocaine from trains into a warehouse under defendant's control. It is without question that the conspiracy involved more than 5 participants and was otherwise extensive. Where, at a minimum, defendant managed and

11

supervised others in the operation of the train system, the three-level role enhancement is appropriate.

## IV. **Analysis of the Sentencing Factors Set Forth in 18 U.S.C. § 3553(a)**

In this case, a sentence within the properly calculated advisory Guidelines range is sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a). Most significantly, a sentence within the advisory range is necessary to reflect the seriousness of the offense. This case is about drug trafficking at the highest levels at which it exists in the world. Defendant conspired directly with Chapo Guzman and other leaders of the Sinaloa Cartel to traffic ton quantities of cocaine that were ultimately distributed in the United States. The direct and indirect damage that those drugs have caused to communities in Chicago and elsewhere is immeasurable. Only through a substantial sentence, which is exactly what Guidelines call for, can the severity of this offense be properly addressed.

Defendant argues that he should receive a sentence at the statutory minimum in large part because there is little need for specific deterrence due to defendant's diminished risk of recidivism brought about by his age. The government agrees that the need for specific deterrence is lessened for that

reason; however, the need for general deterrence is paramount in this case. Defendant was a member of an organization that uses violence and corruption as two of its principle business tools. Even if defendant did not engage in such acts directly, he performed a critical role to perpetuate the Cartel's business. A substantial sentence is required to send a message that such criminal enterprises cannot be permitted to exist.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the government respectfully submits that the Guidelines calculation contained in the PSR is correct and recommends that the Court sentence defendant within the properly calculated advisory Guideline range.

Respectfully submitted,<br>
ZACHARY T. FARDON<br>
United States Attorney

By: *s/Michael Ferrara*
MICHAEL FERRARA
ERIKA CSICSILA
NAANA FRIMPONG
GEORGIA ALEXAKIS
KATHRYN MALIZIA
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7649

Dated: November 8, 2014

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

was served November 8, 2014, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case filing pursuant to the District Court's Electronic Case Filing (ECF) system as to ECF filers.

        Respectfully submitted,
        ZACHARY T. FARDON
        United States Attorney

By:   *s/Michael Ferrara*
      MICHAEL FERRARA
      Assistant United States Attorney
      United States Attorney's Office
      219 South Dearborn Street
      Chicago, Illinois 60604
      (312) 886-7649